UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES AYOT, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 10083 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CITY OF NAPERVILLE, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

James Ayot brought this pro se suit against the City of Naperville, alleging that its police department's treatment of him while handling domestic violence allegations against him violated his civil rights in various respects. Doc. 17. He has since papered the docket with a dizzying array of baseless and/or procedurally improper motions—some to amend his complaint, some seeking sanctions against defense counsel, some seeking judgment, and various others. Docs. 18, 21, 24, 31, 34, 36, 38, 39, 45, 47, 51, 54, 59, 63, 67, 73, 80, 83-85, 94, 97, 101, 108, 112, 114, 118, 124. The vast majority were frivolous and have already been denied. Docs. 20, 23, 29, 33, 41, 42, 50, 53, 61, 62, 65, 70, 75, 82, 86, 96, 99, 103, 111, 117, 122, 126. A request to amend the complaint remains pending. Docs. 76, 78.

The City, for its part, has moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6) on the ground that it is barred by the Illinois "one refiling rule." Doc. 43. It has also moved for sanctions against Ayot. Doc. 87. The City's motion to dismiss is granted, Ayot's motion for leave to amend is denied, and the City's motion for sanctions is denied as moot in part and denied in part.

1

## Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Ayot's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013); *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that a federal court deciding a motion to dismiss may take judicial notice of publicly filed state court records). The facts are set forth as favorably to Ayot as those materials allow. *See Pierce v. Zoetis*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Over a period of several months beginning in late 2015, Ayot had a series of dealings with the City and its police force, all stemming from an ongoing dispute between him and his then-girlfriend, Sharlene Rice. Doc. 17. Ayot's encounters with the police left him feeling aggrieved in various respects. *Ibid*. Between October 17 and October 19, 2015, the police locked up Ayot on suspicion of domestic violence, denied him medical care for several hours despite injuries (allegedly caused by Rice) that eventually required an emergency room visit, and secured a warrant for his arrest based on dubious information. *Id*. at 1-3 ¶¶ 1(a)-2(e). In the months that followed, during a period spanning roughly November 2015 to January 2016, the City refused to help him retrieve personal belongings—including important prescription

medication—from Rice's residence, in violation of a court order requiring them to do so; sought a second warrant against him despite his having an airtight alibi at the time of the alleged offense; refused to take action against Rice for making demonstrably false allegations of online harassment against him; manufactured evidence and falsely accused him of unlawful ex parte communication with a judge; and re-arrested him several times. *Id*. at 3-7 ¶¶ 3(a)-5(c).

On May 26, 2016, in the Circuit Court of DuPage County, Ayot sued the Naperville Police Department for "misconduct/negligence and selective enforcement" in *Ayot v. Naperville Police*, No. 16 L 483 (Cir. Ct. DuPage Cnty., Ill.) ("Case 16 L 483"). Doc. 43-1. The complaint in that suit describes the events of October 17-18, 2015, as well as a series of events spanning from October 27 through December of that year, all of which involved the City (1) giving too much credence to allegations made by Rice against Ayot and too little to allegations made by Ayot against Rice and (2) failing to assist Ayot in retrieving his belongings from Rice. *Ibid*.

On June 8, 2016, in a separate suit in the DuPage County court that was originally brought by Rice against Ayot, *Rice v. Ayot*, No. 16 L 454 (Cir. Ct. DuPage Cnty.) ("Case 16 L 454"), Ayot, having received leave to file a counterclaim, Doc. 43-2, docketed a third-party complaint (mislabeled a "counterclaim," *see* 735 ILCS 5/2-608) against "Naperville Police" for "misconduct/negligence and selective enforcement." Doc. 43-3. The third-party complaint was essentially identical to Ayot's complaint in Case 16 L 483, other than increasing the amount of damages sought from $1,121,172 to $4,000,000.

Just over a week later, on June 16, 2016, Ayot voluntarily dismissed Case 16 L 483. Doc. 43-4. The same day, in Case 16 L 454, the state court struck Ayot's claims against the City. Doc. 43-5.

Next, on June 27, 2016, Ayot filed suit in the Circuit Court of Cook County, *Ayot v. Naperville Police*, No. 16 L 6329 (Cir. Ct. Cook Cnty., Ill.), alleging "negligence police misconduct." Doc. 43-6. The complaint described the events of October 17, 2015—the alleged denial of medical care that Ayot also alleged in Case 16 L 483 and Case 16 L 454. Doc. 43-6. On August 11, 2016, Ayot sought leave to file an amended complaint. Doc. 43-7. His request to do so, styled as a "Motion to include selective enforcement and violation of proper police procedures," again described various interactions with the Naperville Police that took between October 17, 2015, and January 20, 2016—all similar or identical to those identified in Cases 16 L 483 and 16 L 454. Doc. 43-7 at 1-2.

Meanwhile, the City sought and obtained a transfer of the Cook County case to DuPage County, where it was docketed as Case 16 L 883 (Cir. Cit. DuPage Cnty.) on September 12, 2016. Doc. 43-8. Three more attempts to amend the complaint followed, on September 19, September 27, and October 18. All three proposed amended complaints concerned Ayot's interactions with the Naperville police during the same time period—beginning October 17, 2015, and ending in December 2015 or January 2016—and made essentially the same factual allegations as in the previous two suits. Docs. 43-9, 43-10, 66-5. Each of the proposed amendments was denied without prejudice for failure to follow proper procedures. Docs. 66-6 at 2-3, 66-8 at 1-2, 66-10.

On October 27, 2016, Ayot filed this suit in federal court. Doc. 1. Like its predecessors in state court, Ayot's federal complaint began with the alleged denial of medical care he suffered while in custody on October 17, 2015. Doc. 12 at 4. It also described—in less detail than in the state court cases—the events of October 18 and 19 and later incidents in which Naperville police falsely suspected him of crimes and ignored evidence that would have exonerated him. *Ibid*.

On January 6, 2017, Ayot filed an amended complaint in this case, which is the operative complaint. Doc. 17. It is strikingly similar to the complaints he filed in Case 16 L 483 and Case 16 L 454, as well as to the complaint and the proposed amended complaints in Case 16 L 883. In broad strokes, the amended complaint here asserts that: (1) Ayot was denied medical care following his arrest on October 17, 2015, *id*. at 1-2; (2) on October 18 and 19, 2015, Naperville police failed to properly investigate charges against him and obtained an arrest warrant based on that shoddy investigation, *id*. at 2-3; (3) sometime on or after October 20, 2015, the Naperville police refused to help him retrieve important belongings from Rice's house, despite a court order requiring them to do so, *id*. at 3-4; (4) on November 16, 2015, a Naperville police officer obtained another warrant for his arrest, based on an accusation that Ayot committed a crime that he could not have committed because he was incarcerated at the time, *id*. at 4; (5) in early December 2015, Naperville police obtained a warrant for his arrest based on demonstrably fake online threats he had supposedly made against Rice, and later arrested him pursuant to that warrant in January 2016, *id*. at 4-6; and (6) in November 2015, Naperville police officers manufactured evidence against him and made false representations to a judge about him, *id*. at 6-7. In other words, it alleges that between October 2015 and January 2016, various Naperville police officers mishandled domestic violence allegations against Ayot and mistreated him in related interactions that he had with them, just like the previous state court complaints did.

On June 12, 2017, Ayot filed a new federal suit, which was assigned to Judge Tharp. *Ayot v. DuPage County*, 17 C 4401 (N.D. Ill.) ("Case 17 C 4401"). It alleges that DuPage County is committing libel against him by misrepresenting his criminal history on its website. Doc. 1 (Case 17 C 4401).

**Discussion**

The City's motion to dismiss contends that this federal suit is barred by Illinois's "one-refiling rule." Doc. 43 at 5-8. Under Illinois law, "a plaintiff who voluntarily dismisses a suit 'may commence a new action within one year or within the remaining period of limitation, whichever is greater.'" *Carr v. Tillery*, 591 F.3d 909, 914 (7th Cir. 2010) (quoting 735 ILCS 5/13-217). But plaintiffs are limited to one second bite at the apple, and no more; "[t]he Illinois courts interpret [Section 13-217] to mean that a plaintiff who voluntarily dismisses a lawsuit may commence *only one* new action." *Ibid*. (collecting cases); *see also Timberlake v. Illini Hosp.*, 676 N.E.2d 634, 636 (Ill. 1997) ("This court has interpreted section 13-217 as permitting only one refiling even in a case where the applicable statute of limitations has not yet expired."). This one-refiling rule applies in federal court "because it is a rule of preclusion, like res judicata; and a federal court is required to give full faith and credit to records of (including judgments in) state judicial proceedings." *Carr*, 591 F.3d at 914 (internal quotation marks omitted).

Ayot voluntarily dismissed his first state court suit, Case 16 L 483. Doc. 43-4 ("I hereby dismiss this Court action. James Ayot 6/16/16"). So the questions here are: (1) whether the claims he brought in Case 16 L 454 or Case 16 L 883 count as Ayot's one "refiling" of Case 16 L 483 for the purposes of Section 13-217; and (2) if so, whether this suit likewise is a refiling of Case 16 L 483, which would mean it is barred by the one-refiling rule.

"[T]he basis on which the Illinois courts decide whether a suit is a refiling is whether, had its predecessor been dismissed with prejudice, it would be barred by principles of res judicata." *Carr*, 591 F.3d at 915; *see also D'Last Corp. v. Ugent,* 681 N.E.2d 12, 16 (Ill. App. 1997) ("For purposes of section 13-217, a complaint is said to be a refiling of a previously filed complaint if it contains the same cause of action as defined by *res judicata* principles."). "*Res judicata* bars

not only issues that were actually raised in the prior proceeding, but also issues which *could have been* raised in the prior proceeding." *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007) (emphasis added); *see also Wilson v. Edward Hosp.*, 981 N.E.2d 971, 975 (Ill. 2012); *Smith Tr. & Sav. Bank v. Young*, 727 N.E.2d 1042, 1045 (Ill. App. 2000). In Illinois, *res judicata* applies if, as relevant here, "there is an identity of cause of action, and … there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998); *see also Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 727-28 (7th Cir. 2014). Here, the parties to each of Ayot's complaints are essentially the same: Ayot on one side and the City of Naperville and/or its police department on the other, with the City defending each suit. *See Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 822-23 (7th Cir. 2006) ("Res judicata bars subsequent suits against those who were not party to a prior suit if their interests are closely related to those who were.") (collecting cases); *Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002) ("We have recognized that under Illinois law a government and its officers are in privity for purposes of *res judicata*."); *Dempsey v. City of Harrisburg*, 279 N.E.2d 55, 57 (Ill. App. 1971) (holding that the City of Harrisburg and the trustees of its police pension fund were the same party for *res judicata* purposes because "[t]he city is a municipal corporation and must necessarily conduct its affairs through many different officers, agencies, and employees" and so was "[t]he real party in interest in both" proceedings); *Bonds v. City of Chicago*, 2017 WL 698680, at *6 (N.D. Ill. Feb. 22, 2017) ("Identity of the party defendant is not defeated by [the plaintiff's] mistake of naming the 'Chicago Police Department' [instead of 'the City of Chicago'] in her state court action … ."). So the only issue is whether there is "an identity of cause of action" among the complaints.

7

To resolve that question, Illinois courts apply a "transactional test," under which "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 703 N.E.2d at 893; *see also Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 558-59 (7th Cir. 2014). "Illinois does not require the same evidence or an identical theory of relief." *Cooney v. Rossiter*, 986 N.E.2d 618, 622 (Ill. 2012). Rather, what constitutes a "single group of operative facts" is "determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *River Park*, 703 N.E.2d at 893 (internal quotation marks omitted); *see also Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 637-39 (7th Cir. 2004).

Returning to the first question set forth above, Ayot's third-party complaint in Case 16 L 454 perhaps could count as his one refiling of Case 16 L 483. There is no question that the third-party complaint raises the exact same claims as Case 16 L 483—the parties and allegations in both complaints are identical. And neither the fact that Ayot styled his claims in Case 16 L 454 as "counterclaims" (rather than initiating a new lawsuit), nor the fact that he attempted to assert his claims in Case 16 L 454 *before* his voluntary dismissal of Case 16 L 483, prevents Case 16 L 454 from serving as his one permitted refiling. *See Carr*, 591 F.3d at 914-15 ("[The plaintiff] argues that the [one-refiling] rule applies only when the first refiled suit is dismissed *before* the second one is filed; otherwise the second refiled suit isn't really 'new.' That is not correct … . The new action is the action filed later; the date on which the previous action was dismissed is irrelevant.") (citing *Schrager v. Grossman*, 752 N.E.2d 1, 5-6 (Ill. App. 2000)); *id*. at 915 (treating a counterclaim as the first filing of the claims at issue); *Fourth St. Villas, LLC v. United*

*Cent. Bank*, 2016 WL 7108064, at *3-4 (Ill. App. Dec. 5, 2016) (holding that the one-refiling rule applies to counterclaims); *United Cent. Bank v. Wells St. Apartments, LLC*, 957 F. Supp. 2d 978, 985 (E.D. Wis. 2013) (applying the Illinois one-refiling rule to a counterclaim and rejecting the argument that it was not barred because it was filed before the voluntary dismissal of the predecessor suit). But the City does not ask the court to treat Ayot's claims in Case 16 L 454 as a refiling of Case 16 L 483, Doc. 66 at 9, and there is no need to reach that question.

That is because Case 16 L 883 is a refiling of Case 16 L 483, even if Case 16 L 454 is not. Ayot argues that Case 16 L 883 is different from Case 16 L 483 because it seeks to raise only the denial of medical care on October 17, 2015, and not the remainder of his claims from the earlier suit. Docs. 47, 56. But even though the initial (and apparently still operative) complaint in Case 16 L 883 is limited to the events of October 17, Ayot has consistently treated those allegations as part of a continuing course of related conduct spanning October 2015 to January 2016—meaning that its "treatment as a unit [with those other events] conforms to the parties' expectations." *River Park*, 703 N.E.2d at 893. Indeed, Ayot's multiple proposed amended complaints in Case 16 L 883 all seek to raise his full panoply of grievances. Moreover, Ayot's various other complaints all make clear that the subsequent conduct in which the Naperville police engaged was "related in … origin[ and] motivation," *ibid*., to the events of October 17—all of the alleged conduct arises out of the same domestic dispute between Ayot and Rice, and is allegedly motivated by the City's bias against Ayot (or at least indifference towards his rights) and/or its favoritism toward Rice. *See Chicago Title Land Tr. Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1081 (7th Cir. 2011) ("[T]he principle that res judicata prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more

9

than one proceeding."); *Huon v. Johnson & Bell, Ltd.*, 2013 WL 1984414, at *6 (N.D. Ill. May 13, 2013) (holding that two cases were the same cause of action for *res judicata* purposes, even though the facts relevant to one were only a subset of the facts relevant to the other, because neither the parties nor the court found "any Illinois authority that would allow [the plaintiff] to split his claims because the federal claims had a broader time period and additional unfavorable treatment than the state court claims"); Restatement (Second) of Judgments § 24, comment *d* (1982) ("When a defendant is accused of … acts which though occurring over a period of time were substantially of the same sort and similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action.").

As to the second question set forth above, this suit, like Case 16 L 883, is a refiling of Case 16 L 483, and so must be dismissed under the one refiling rule. It concerns the same course of conduct by the City spanning the same time period. Its specific allegations are largely identical or only slightly recast, and identify several of the same of officers as specific offenders. *Compare* Doc. 17 (naming officers "Rettinmeyer," Curran, Mannino, Nance, and Negley), *with* Doc. 43-3 (naming officers "Retinmeyer," Curran, Mannino, and Pope). It is plain that this is the same suit, rehashed with only minor variation for the third—or perhaps fourth—time. For that reason, Ayot's prior filing in Case 16 L 883, his one permitted refiling of Case 16 L 483, compels dismissal of this action under the one-refiling rule.

There remains the matter of Ayot's pending motion for leave to amend. Much of the proposed amended complaint, Doc. 78, simply adds detail to claims or events already described in the operative complaint. *E.g.*, *id*. at 1 (adding to Ayot's allegations concerning the events of October 17, 2015, the additional detail that the charges on which he was arrested were later determined to be "unfounded"); *id*. at 3 (adding the allegation that, when Ayot was discharged

from the hospital where he was taken following the City's alleged denial of medical care to him in lockup, the police lost his aftercare instructions on the way back to the jail and then failed to accommodate dietary restrictions set forth in those instructions). These amendment requests are denied because they are futile—the relevant claims are already being dismissed with prejudice under the one-refiling rule, and tinkering with their particulars would not save them under the transactional test described above.

The amended complaint also seeks to add an allegation that "Naperville police and Dupage Sao [State's Attorney's Office]" have libeled Ayot by misrepresenting his criminal history on the DuPage County Sherriff's website —inaccurately reporting that domestic violence charges against him that were resolved via *nolle prosequi* remain "open and active." Doc. 78 at 4, 11. Those allegations are different from the others—they were not previously raised in the state cases, address a later time period than the prior allegations (the charges that Ayot complains about were *nolle prosequi*'ed between January and July 2016, *id.* at 4), and concern misconduct that allegedly remains ongoing. So that claim may fall outside the scope of the one-refiling rule. Nevertheless, leave to add this claim is denied. If Ayot's libel claim is not barred by the one-refiling rule, then it is a distinct case or controversy that is best litigated independently. Indeed, the libel claim is the very claim that Ayot has filed separately in Case 17 C 4401, and the denial of leave to add that claim in this case is without prejudice to his pursuing it in the other case. There is no reason to allow a duplicative allegation to proceed here, especially now that it would be Ayot's sole remaining claim. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("As a general rule, a federal suit may be dismissed for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court.") (internal quotation marks omitted).

Finally, there is the City's motion for sanctions, which catalogs a host of assertedly vexatious behavior by Ayot—including various frivolous motions he filed and an unwarranted referral of defense counsel to the Attorney Registration and Disciplinary Commission—and asks the court to sanction him for that conduct. Doc. 87. The primary sanction the motion seeks is dismissal of Ayot's claims. *Id*. at ¶¶ 43, 46. Because, as just discussed, the City's meritorious motion to dismiss is sufficient basis for dismissal, the City is already entitled to that relief, and that request is moot.

The only other relief sought is an award of fees against Ayot—$1,500 to compensate the City for the time its attorneys spent dealing with Ayot's frivolous filings and moving for sanctions against him. *Id*. at ¶¶ 43-45. That request is denied. This suit, though barred, appears to have been filed in good faith; given the course of Ayot's prior litigation in state court, it was not objectively unreasonable for him to fail to realize that the one-refiling rule would apply. So even assuming Ayot's conduct during this litigation is sanctionable—a question the court need not, and so does not, reach—the dismissal of this suit with prejudice ought to put Ayot on sufficient notice that his multiplicitous approach to litigation is not serving him well, and that he must measure twice and file once (if at all) in his other cases.

## Conclusion

For the foregoing reasons, the City's motion to dismiss is granted with prejudice; Ayot's motion for leave to amend is denied; and the City's motion for sanctions is denied as moot in part and denied in part.

July 12, 2017

_____
United States District Judge